UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

WILLIAM APPLEGATE,　　　　　　　　　　　　Case No.　23-CV-6981

　　　　　　　Plaintiff,

　　　　　　　　　　　　　　　　　　　　　　　**COMPLAINT
　　　　　　　　　　　　　　　　　　　　　　　AND JURY DEMAND**

-against-


THE MOUNT SINAI HOSPITAL,

　　　　　　　Defendant.
-----------------------------------------------------------x

　　　　Plaintiff William Applegate ("Plaintiff" or "Mr. Applegate"), by his attorneys, Menken Simpson & Rozger LLP, complaining of Defendant The Mount Sinai Hospital ("Mt Sinai" or "the company") alleges:

## PRELIMINARY STATEMENT

　　　　1.　　Mr. Applegate was a very strong candidate for the position of Marketing Director for the Urology Department at Mt. Sinai. He wowed the head of the department, Dr. Ashutosh Tewari, Chairman of the Urology Department, at his first interview, and was offered the job on the spot. During his short tenure at Mt. Sinai, Mr. Applegate formulated and implemented plans to achieve the Department's long-term goals and was well on the way toward realizing them. However, his ability to succeed in this position was cut off by Dr. Tewari's inappropriate request that Mr. Applegate use Mt. Sinai time and money to work on his personal website. When Mr. Applegate rightfully raised this ethical issue, he was told by Darren Deoraj, the System Director of Operations in the Urology Department that while the request was inappropriate, he should comply with Dr. Tewari, lest he lose his job. Mr. Applegate was stuck in a lose-lose situation,

1

and, unbeknownst to him, his righteous complaint about Dr. Tewari's impropriety guaranteed his eventual termination. Despite evidence to the contrary, including his great work ethic, his strong people skills, and the scheduling of future meetings, Mr. Applegate was summarily terminated on March 10th, 2022, with no explanation given.

2. Mr. Applegate brings this action against his former employer, Defendant Mt. Sinai, to redress violations of New York Labor Law § 740 based on Mt. Sinai's retaliatory termination of his position after he expressly complained about the conversion of Mt. Sinai funds and falsification of Mt. Sinai business records.

3. Mr. Applegate seeks economic, injunctive and declaratory relief, reinstatement, punitive damages, as well as attorneys' fees, costs and all other appropriate relief pursuant to local law.

## THE PARTIES, JURISDICITON, AND VENUE

4. At all times relevant to this action, Mr. Applegate was a resident of Bergen County, New Jersey.

5. At all times relevant to this action, Defendant Mt. Sinai was Mr. Applegate's employer within the meaning of New York Labor Law § 740.

6. Defendant Mt. Sinai is a non-profit corporation organized pursuant to the laws of the State of New York, with its principal place of business located at One Gustave L Levy Place New York, NY 10029.

7. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §1332 because the Complaint seeks legal remedies in excess of $75,000 and there is complete diversity of citizenship between Plaintiff Applegate and Defendant Mt. Sinai.

As Defendant is located in, and regularly does business within, the Southern District of New York, venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).

## **FACTUAL ALLEGATIONS**

### Mr. Applegate's Impressive Background and Hiring at Mt. Sinai

8.  Mr. Applegate has extensive experience and an impressive breadth of knowledge of marketing.

9.  Mr. Applegate has a stellar background: he has directed a 65 person staff with a $32M budget; he has creative experience in both marketing and brand management; he has digital media experience at the corporate level; he has market research experience on a quantitative and qualitative level; and he possesses the seniority and gravitas that ensures he is heard and respected in the executive suite.

10. Mr. Applegate was so impressive that he was hired at his very first meeting with Dr. Tewari on July 20, 2022.

11. Dr. Tewari was particularly impressed by the fact that Mr. Applegate had worked in a similar marketing executive role for Dr. Peter Scardino, the Chairman of Surgery at Memorial Sloan Kettering Cancer Center and a mentor of Dr. Tewari's.

12. Dr. Tewari noted during Mr. Applegate's interview that he was writing a book which he intends to dedicate to Dr. Scardino.

13. Mr. Applegate was exactly what Dr. Tewari was looking for and was promptly hired at an annual salary of $170,000 as the Marketing Director for the Urology Department at Mt. Sinai.

14. Mr. Applegate resigned from his previous role at Holy Name Medical Center in order to begin work on September 12, 2022.

15. His two primary goals in his position were to help improve the Urology Department's U.S. News & World Report ranking and to increase the number of international patients coming for treatment and care by at least 50%.

16. Mr. Applegate immediately got to work and, in his short time at Mt. Sinai, was already well on his way to satisfying this mission.

17. To improve the Department's U.S. News & World Report ranking, he devised a plan, calendar and script for an extensive call campaign.

18. To increase the volume of international patients, Mr. Applegate came up with a plan that Dr. Tewari lauded as "innovative."

19. Rather than directly market to international patients, Mr. Applegate conceived of a more global, macro plan where the Department would establish referral connections with other hospitals and medical facilities around the world.

20. In addition to setting up patient referral relationships, Mr. Applegate's plan included the creation of true partnerships with foreign facilities that incorporated aspects such as shared continuing medical education training and marketing efforts.

21. Mr. Applegate spearheaded the identification and engagement of a well-known outside vendor, Global Healthcare Resources, to facilitate this project.

22. Mr. Applegate worked with and had multiple meetings and discussions with Global Healthcare Resources to develop a proposal of this plan.

23.     The final version of this innovative plan was shared with the department's Senior Director of Finance, Shalini Gujral, for approval in order to advance the long-term goals of the Department.

24.     Serious funding discussions ensued and a meeting to present the proposal to Dr. Tewari was scheduled for March 15 (just five days after Mr. Applegate was ultimately terminated).

### Dr. Tewari's Misuse of Funds and Mr. Applegate's Protected Complaint

25.     Having obviously impressed Dr. Tewari with his commitment and hard work, Dr. Tewari asked Mr. Applegate to come into his office in the middle of November 2022, shortly before Thanksgiving, to give him an assignment.

26.     This meeting was memorable for many reasons, first because of what Dr. Tewari asked Mr. Applegate to do, and second because it was the only time the two men met alone in Dr. Tewari's office.

27.     During this meeting, Dr. Tewari told Mr. Applegate, "I need you to get someone to work on my website."

28.     Dr. Tewari continued and said, in sum or substance, "I have a series of enhancements I want to make, especially regarding the inclusion of a channel for video content."

29.     Mr. Applegate impulsively assented, since the instruction came from Dr. Tewari.

30.     However, when Mr. Applegate researched the website, he learned that Dr. Tewari's website (prostatecancercenternyc.com) was initially created by an outside developer unaffiliated with Mt. Sinai, was not managed under the auspices of Mt. Sinai's Central Marketing Department and was not branded by Mt. Sinai.

31. A review of the website (done contemporaneously with Mr. Applegate's protected complaint) did not identify Dr. Tewari as a Mt. Sinai employee or Icahn School of Medical faculty member, nor did it contain a single mention of Mt. Sinai.

32. Further, Mt. Sinai's Urology Department marketing budget did not contain any allocation to support what was obviously a personal website for Dr. Tewari.

33. Having had little contact or meaningful conversation with Dr. Tewari in the few months he had been working at Mt. Sinai, Mr. Applegate was conflicted and believed Dr. Tewari's order was contrary to all relevant laws, rules, and/or regulations.

34. Mr. Applegate decided to speak to Mr. Deoraj, the System Director of Operations in the Department, at their next "one on one" meeting.

35. At the meeting, Mr. Applegate expressed his concerns and questioned the propriety of working on and spending Mt. Sinai's funds on Dr. Tewari's personal website.

36. Mr. Applegate reasonably believed Dr. Tewari's actions were unlawful, impermissible, and potentially involved the conversion of funds and/or falsification of business records.

37. Mr. Deoraj paused for a moment and then expressly stated that the professional and clinical staff of Mt. Sinai are prohibited from having private business websites of their own.

38. However, after confirming Mr. Applegate's suspicions, Mr. Deoraj said, "if you value your position here, I suggest you do what you were told and keep your mouth shut. I don't want to know anything about this."

39. Mr. Applegate was stunned.

40. Being 75 years old and having just started at Mt. Sinai, Mr. Applegate concluded it was best to follow Mr. Deoraj's advice to retain his job.

**Mr. Applegate Complies with Dr. Tewari's Order and is Fired**

41. Using contacts from a prior place of employment, Mr. Applegate contacted Stamats Communications, Inc. to do the work requested by Dr. Tewari on his website.

42. Mr. Applegate scheduled an in-person meeting between Dr. Tewari and Stamats Communications for December 6, 2022.

43. Though the meeting was scheduled for 8 a.m., Dr. Tewari was three hours late, as was typical for him.

44. Dr. Tewari specified the changes he wanted made to his website and the meeting ended.

45. Several days later, Stamats delivered a proposal to Mr. Applegate who, in turn, shared it with Dr. Tewari who accepted it with no revisions.

46. The total cost of this project was $34,600.

47. Since Stamats was not an approved Mt. Sinai vendor, Mr. Applegate, at the direction of the Department's Senior Director of Finance, followed the procedure to obtain authorization from the Accounting Department to make Stamats a certified vendor.

48. Dr. Tewari then signed the purchase order as the Head of the Department.

49. Mr. Applegate and two of his direct reports, Smita Rajgopal and Michael Inocencio, as well as Dr. Tewari's Administrative Assistant, Anastasia Karpenko, spent many Mt. Sinai working hours meeting and consulting with Stamats representatives to complete the work Dr. Tewari specified on his website.

50. After much work, the website revisions had progressed to a point where a Zoom meeting with Dr. Tewari to present Statmats' progress was appropriate.

51. The meeting was scheduled for Wednesday March 15, 2023, at 3 p.m.

52. Although he understood that the meeting took place, Mr. Applegate did not attend, as he was terminated prior to that meeting.

53. On March 10, 2023, Mr. Applegate was summoned to a meeting with Mr. Deoraj, the same person who acknowledged the impropriety of Dr. Tewari's website and told Mr. Applegate to keep quiet.

54. Mr. Deoraj informed Mr. Applegate that his employment with Mt. Sinai was terminated, effective immediately.

55. No explanation was provided.

56. Mr. Applegate was shocked and promptly left the premises.

57. Considering he did great work, was well liked and was making solid progress to meeting the initial goals Dr. Tewari set out for the program, it is clear that Mr. Applegate was summarily fired by Mr. Deoraj, at Dr. Tewari's insistence, because of his good faith complaints to Mr. Deoraj about the propriety of working on, and financing, Dr. Tewari's personal website.

58. As a result of Mt. Sinai's retaliatory conduct, Mr. Applegate has suffered and will continue to suffer substantial economic damages.

59. At 75 years old, Mr. Applegate will be hard pressed to find another job to replace the one that was stolen from him through improper and illegal conduct.

**FIRST CAUSE OF ACTION**
**(Prohibited Retaliatory Action By Defendant)**
**N.Y. Lab. Law § 740**

60. Plaintiff repeats and incorporates by reference all of the above allegations as if fully set forth herein.

61. Particularly, Plaintiff has a good faith reason to believe, and in fact did believe, that Dr. Tewari's actions were in violation of a law, rule, or regulation.

62. Plaintiff, disclosed a policy or practice of the employer that he reasonably believed was in violation of a law, rule, or regulation.

63. Defendant took retaliatory action against Plaintiff by terminating him, in violation of N.Y. Lab. Law § 740.

64. Defendant took this action in a willful, malicious, and wanton manner.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a Judgment:

a. Declaring the acts, policies, and practices complained of herein to be violations of the New York State Labor Law;

b. Enjoining and permanently restraining these violations;

c. Directing Defendant to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated;

d. Directing Defendant to make Plaintiff whole for all earnings and other amounts or benefits he would have received but for Defendant's retaliatory and unlawful conduct, including, but not limited to, wages and other lost benefits;

e. Directing Defendant to reinstate Plaintiff to the same position held before the retaliation action, or to an equivalent position, or front pay in lieu thereof;

f. Directing Defendant to reinstate Plaintiff's full fringe benefits and seniority rights;

g. Directing Defendant to pay Plaintiff punitive damages pursuant to N.Y. Lab. Law § 740(5)(g).

h. Awarding Plaintiff such interest as is allowed by law;

i. Awarding Plaintiff reasonable attorney's fees and costs; and

j. Granting Plaintiff such other and further relief as the Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: August 8, 2023
New York, New York

                               By:    _/s/ Bruce Menken_____
                                         Bruce Menken
                                         MENKEN SIMPSON & ROZGER LLP
                                         80 Pine Street, 33rd Floor
                                         New York, NY 10005
                                         Tel.: (212) 509-1616
                                         Fax: (212) 509-8088
                                         bmenken@nyemployeelaw.com

                                         *Attorney for Plaintiff*